UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

TRAY COLE, et al.,

      Plaintiffs,

v.                                                        Case No. 23cv01321

CITY OF WAUWATOSA, et al.,

      Defendants.

---

WILLIAM RIVERA, et al.,

      Plaintiffs,

v.                                                        Case No. 23cv1330

CITY OF WAUWATOSA, et al.,

      Defendants

---

## DEFENDANTS' COMBINED REPLY BRIEF IN SUPPORT OF THEIR PETITION FOR ATTORNEYS' FEES AND COSTS (RIVERA ECF 37) and (COLE ECF 42)

---

      The Court appropriately sanctioned Plaintiffs' counsel for the initiation and continued pursuit—even after being put on notice—of two lawsuits against the Defendants that were without reasonable basis in fact and were barred by *res judicata*. (Rivera ECF 35; Cole ECF 40)[1] The sanction awarded Defendants their costs of litigating each of the frivolous lawsuits which were filed in October of 2023 and dismissed on Defendants' motion in June of 2024. (*Id.* at 8) The actions of Plaintiffs' counsel—which this Court noted included Attorney Cade's borderline frivolous Rule 11 threat (*id*. at 5)—required Defendants to incur $21,905.00 in attorney fees to accomplish the entire litigation of each case through dismissal. *See generally* (Rivera ECF 37 at

---

[1] For ease of reference, I will refer to Case No. 23-cv-1321 as "Cole" and will refer to Case No. 23-cv-1330 as "Rivera."

1

1-2 and ECF 38 ¶ 5) These fees were reasonable and should be awarded because "the choices made by plaintiffs' counsel have unnecessarily consumed both the Court's limited resources and that of Defense counsel." (Rivera ECF 35 at 6) The 27-page Response submitted by Attorney Cade (Rivera ECF 41) does not change that fact nor does it contradict Defendants' entitlement to the fees sought.

1. **Attorney Motley Cannot Avoid Sanctions Because Defense Costs Were Covered by Insurance.**

Plaintiffs' first and most absurd argument is that Attorney Motley should not have to pay the attorney's fees because the Defendants—the City of Wauwatosa and its police officers—"did not pay a single penny toward attorney's fees" as those costs were paid by the City's insurer. (Rivera ECF 41 at 6) Not only is this suggestion legally unsupported, but it is incorrect that Wauwatosa "did not pay a single penny towards fees." Wauwatosa pays premiums to procure and maintain insurance coverage from Cities and Villages Mutual Insurance Company ("CVMIC"). That coverage provides for legal representation for covered losses such as here, but only after Wauwatosa exhausts its self-insured retention (SIR), akin to a deductible for each occurrence. (Baynard Suppl. Decl. ¶ 4) At the time of this occurrence Wauwatosa's SIR was $125,000. (Baynard Suppl. Decl. ¶ 5) The entire premise of our defense is that the lawsuits—Rivera and Cole—were improper claim-splitting and issue preclusion because of the *Knowlton* lawsuit. Attorney Motley was the attorney in the *Knowlton* case and during that litigation and 5-day trial exhausted the City's SIR. (Baynard Suppl. Decl. ¶ 2) It is nonsensical to suggest that she can skirt sanctions for filing frivolous duplicative lawsuits simply because the insurance limits were exhausted the in the first lawsuit. By that logic, sanctions and fee awards would never be available to insured municipal defendants nor would individually sued officers be entitled to indemnification under Wis. Stat. sec. 895.46.

In setting the fee award, the district court should consider the actual agreements between the parties and fee arrangements. CVMIC insures the City of Wauwatosa and its employees and within their policy agrees to pay for the City's defense in covered lawsuits. (Baynard Suppl. Decl. ¶ 5) The relevant portion of that policy is as follows:

> G.  DEFENSE COSTS - means fees and expenses incurred by the Mutual or an INSURED caused by and relating to the adjustment, investigation, defense or appeal of a CLAIM, including attorney's fees, court costs and interest on judgments accruing after entry of judgment, all within the scope of coverage afforded by this policy.
>
> .    .    .
>
> I.  SUBROGATION
>
> The Mutual shall be subrogated to the extent of any payment hereunder to all the INSURED's rights of recovery thereof, and the INSURED shall do nothing after loss to prejudice such right and shall do everything necessary to secure such right.
>
> In case any reimbursement is obtained or recovery made by the INSURED or the Mutual on account of any loss covered by this policy, the amounts recovered shall be applied as follows:
>
> 1.  The expenses of all such recovery proceedings shall be paid before any reimbursements are made. If there is no recovery in the proceedings conducted by the Mutual it shall bear the expenses thereof.
>
> 2.  The highest layer of coverage shall be reimbursed first and, if there are sufficient recoveries, then the next-highest layer, until the INSURED'S Retained Limit is reimbursed or until all recoveries are used up.

(Baynard Suppl. Decl. Exh. A)

Plaintiffs' suggestion that it would be "unethical" for the court to award fees because defense counsel has already been paid their fees by the insurance company is similarly baseless.[2] An insurance company's retention of a law firm to represent the insured and the insured's acceptance of the representation pursuant to the liability insurance policy creates an attorney-client

---

[2] Plaintiffs acknowledge that the Defendants attorneys' fees have been paid, yet argue elsewhere that there is no proof that any bills were ever submitted for payment or actually paid.

3

relationship between retained counsel and the insured. *Juneau Cnty. Star-Times v. Juneau Cnty.*, 2013 WI 4, 345 Wis. 2d 122, 824 N.W.2d 457. Here recovery was awarded in the amount of the defense attorneys' fees, which is explicitly accounted for by the insurance policy.

The argument suggesting that attorneys' fees should not be awarded because the court granted "actual attorney's fees expended in defending against the Cole and Rivera matters, not for nominal damages to be awarded" is similarly nonsensical. To summarize—because Plaintiffs initiated two frivolous and duplicative actions that arose from the SAME OCCURRENCE as the preceding lawsuit, the City's insurer considered it as the same occurrence for the purpose of the City's SIR. The suggestion that this should absolve Attorney Motley from paying sanctions is not rooted in any legal standard and is simply wishful thinking from Attorney Cade.

2. **Defense Counsel's Itemizations and Invoices Reflect the Actual Fees Incurred, Billed and Paid and Are Not Impermissibly Redacted or Vague.**

Plaintiffs allege the invoices submitted leave the Plaintiffs and Court with no choice but to guess the actual time that the attorneys and paralegal billed and what work was performed. This is inaccurate. The billing invoices and itemization clearly sets out the date, file, work performed, who performed the work, the number of hours worked, and the charge for said work. (Rivera ECF 38-1 and ECF 43-5) However, for ease of reference, Defendants have prepared the chart below outlining the total hours worked by each employee:

| Attorney Baynard | 58.7 hours x $250 = | $14,675.00 |
| Attorney Wirth | 6.5 hours x $250 = | $1,625.00 |
| Attorney Thobani | 3.5 hours x $250 = | $875.00 |
| Paralegal Montgomery | 30.7 hours x $150 = | $4,605.00 |
| TOTAL | | $21,780.00 |

Instead of looking at the actual billing records, Plaintiffs refer to the summary contained in the Defendants' moving brief to suggest the fees requested are too vague to justify the $21,905 in

fees. (Rivera ECF 41 at 9-10) For example, Plaintiffs takes issue with 4.2 hours for completing "procedural filings." (Rivera ECF 41 p. 9) Defendants did not fail to explain what was filed, when the documents were filed, in which case they were filed, and whether the attorney or paralegal submitted the filings. The billing invoices submitted outline all of that information. (Rivera ECF 43-5 at 2-5) For example, Waivers of Service, Rule 7.1 Disclosure Statements, draft of Initial Disclosures performed by the Paralegal, and the drafting of the Rule 26(f) Report performed by Attorney Baynard.

| 11/20/23 | CMM | [Cole] Prepare and file Rule 7.1 Disclosure Statement and ▬▬▬ | 1.50 | .40 |
|---|---|---|---|---|
|  | CMM | [Rivera] Prepare and file Rule 7.1 Disclosure Statement and ▬▬▬ | 1.50 | .40 |
| 2/16/24 | CMM | [Rivera] Prepare draft of Rule 26(f) Report. | 1.50 | .50 |
| 2/19/24 | JMB | [Rivera] Draft and revise 26(f) report and meet and confer with Attorney Motley | 2.50 | 1.0 |

Plaintiffs challenge the 9.4 hours expended in preparing responses to pleadings, including responses to the 28-page Cole Complaint and 29-page Cole Amended Complaint, and the 33-page Rivera Complaint. (Rivera ECF 41 at 9) Specifically, Plaintiffs take issue with time billed for drafting an Answer to the Complaint in Cole, when the only Answer filed with the court was to the Amended Complaint. What Plaintiffs fail to mention is that the Cole Complaint (Cole ECF 1), filed on October 6, 2023, was received by defense counsel on or about October 7, 2023. Defendants signed Waivers of Service on November 10, 2023. The Amended Complaint was not filed until December 13, 2023. (Cole ECF 15) Defendants had already began reviewing, investigating, and preparing their response to the Complaint before the Amended Complaint was filed and, when served with the Amended Complaint, did their due diligence to compare the original Complaint to the Amended Complaint to check for any changes in wording and allegations. There is no legal

5

Case 2:23-cv-01321-NJ    Filed 08/23/24    Page 5 of 16    Document 49

authority that prevents Defendants from obtaining fees for drafting documents that were never filed.

Plaintiffs also take issue with the redactions presumably contained in the billing invoices submitted with their fee application. (Rivera ECF 38-1) All of the completely blocked out redactions within the invoices provided to Plaintiffs were related to work on the *Knowlton* appeal, or unrelated 2020 protest cases, which is why the top of the invoice references **Kathryn Knowlton, et al. v. City of Wauwatosa, et**. *See id*. Defendants are not seeking reimbursement for those fees therefore they are irrelevant.

In preparation for a meet and confer on the sanctions award, Defendants compiled an itemization of the fees that relate only to the Cole/Rivera cases and for which they sought reimbursement. *See generally* (Rivera ECF 43-5) That itemization contained 86 total time entries for work completed and billed on both cases between October 10, 2023, and June 10, 2024. *See generally* (*id*.) Of those 86 entries only 21 have redactions and none are completely redacted. Of the 21 redacted entries, 7 relate to brief communications between defense counsel and the Defendants. As shown below, these entries are not impermissibly redacted.

| 11/6/23 | JMB | [Cole] Telephone conference with City Attorneys Office ▮▮▮ | 2.50 | .50 |
|---|---|---|---|---|
| 11/13/23 | JMB | [Rivera] Telephone conference with Officer Schlies ▮▮▮ | 2.50 | .60 |
| 12/1/23 | JMB | [Cole] Telephone conference with Officer Mitchell ▮▮▮ | 2.50 | .50 |
| | CMM | [Rivera] Email correspondence to/from ▮▮ at WPD confirming ▮▮▮ | 1.50 | .20 |
| | CMM | [Rivera] Email correspondence to ▮▮ the Municipal Court ▮▮▮ | 1.50 | .20 |

| 1/26/24 | JMB | [Rivera] TFC Richard Russell's Estate regarding ▮▮▮ | 2.50 | .50 | |
| 6/10/24 | JMB | [Cole/Rivera] Receipt and review of Court Order granting Defendants motion for sanctions and awarding reasonable litigation costs and fees; telephone conference with client ▮▮▮ | 2.50 | .60 | |

Plaintiffs make the broad statement that the billing invoices are impermissibly redacted, yet cite only three examples. (Rivera ECF 41 pg. 10-11) On October 10, 2023, Attorney Baynard spent 2.5 hours comparing the allegations in the duplicative Cole lawsuit to the allegations made by the same Plaintiffs in the *Knowlton* suit. As this court is well aware, the *Knowlton* Complaint had five different versions and in its final form a total of 70 + parties, 138 pages and 1114 allegations. (Knowlton ECF 155)

On 12/1/23, Attorney Baynard billed 30 minutes for reviewing/analyzing Tracy Cole's medical records and on 12/1/23 Paralegal Montgomery billed 0.8 minutes for reviewing footage from the arrest. Neither of these entries are impermissibly vague and both were fees reasonably required to litigate the duplicative actions. Even though the suits were identical, Plaintiffs changed some of the factual allegations. For example:

> Taleavia Cole was forced out of the car by officers had a knee put to the back of her neck and a gun pointed at her head and is still undergoing medical treatment. (Cole ECF 15 ¶ 7)

> Plaintiff Taleavia Cole was violently pulled out of her car by Defendants Richardson and John Does, thrown to the ground and had a gun pointed at her by John Doe Defendant. (Knowlton ECF 155 ¶ 960)

A review of the evidence was required to respond to the Complaint. Moreover, the amount of evidence produced in the approximately three years that the *Knowlton* case was pending was extensive. Defense counsel did not and was not required to commit each of those facts to memory.

7

When the Cole Plaintiffs filed a duplicative lawsuit Defendants were required to re-review some of the available evidence to respond to the new complaints.

Plaintiffs initiated these duplicative actions while their appeal of the first case was still pending. Of course the invoices are redacted to remove attorney-client work product as any other fee petition filed with the court would. Defendants redacted the bills to remove legal strategy in the off chance that the Seventh Circuit remands.

### 3. The Hours Expended Litigating These Cases—Which Should Not Have Been Brought In The First Place—Were Reasonable And Should Be Approved.

Plaintiff's suggestion that the work done for the Cole, Rivera and Smith matters was duplicative and required "non-substantive" changes is inaccurate. <u>To summarize</u>:

- The duplicative *Smith* involved a single plaintiff's claim of excessive force during a September 2020 incident and did not challenge the October 2020 curfew period or any actions taken by officers during the curfew period. *See Smith v. City of Wauwatosa, et al.*, Case. No. 23-cv-1337 (E.D. Wis.). The Smith Complaint contained 68 allegations. There were no Amended Complaints filed.

- The duplicative *Rivera* lawsuit involved four separate plaintiffs and 10 separate causes of action relating to arrests that took place on October 9 and 10 during the curfew period. The Rivera Complaint contained 216 paragraphs – just over 3 times that of Smith. (Rivera ECF 1) The *Rivera* Complaint also added state law claims.

- The duplicative *Cole* lawsuit involved two plaintiffs and seven causes of action. (Cole ECF 1 and 15) The *Cole* Complaint and Amended Complaint contained 249 allegations – almost 4 times that of *Smith*. Further, *Cole* involved claims of specific officers' actions that allegedly caused specific injuries.

Plaintiffs point to only two paragraphs which state the legal standard in the 19-page 12c motion in *Rivera* (Rivera ECF 25), 15-page 12c motion in *Cole* (Cole ECF 28), and 10-page 12c motion in *Smith* to suggest the pleadings are duplicative. (Rivera ECF 41 at 15-17) Moreover, the resolution of the *Smith* matter was achieved via a single motion for judgment on the pleadings. Unlike counsel in *Smith,* Attorney Motley required Defendants to file responses to motions to stay,

moving briefs and replies to motions for judgment on the pleadings, moving briefs and replies to motions for sanctions; and an opposition to a frivolous retaliatory motion for sanctions. Unlike *Smith*, *Rivera* and *Cole* required Defendants to analyze and shepardize opposition case law.

Plaintiffs also misstate the amount of time spent drafting the Smith 12c motion, indeed they only submit bills that were submitted directly to Wauwatosa. They do not provide any bills submitted to CVMIC for the Smith case. The total time attorney Baynard spent drafting that 12c motion was 7.9. (Baynard Suppl. Decl. ¶ 9)

Defendants acknowledge that there was overlap in some of the background investigation/research, and consequently billed their clients a single time for the identified work, thereby avoiding duplicative billing. Here, defense counsel has taken care to avoid redundant or duplicative billing. However, the factual development, comparison and preparation of the briefing in the Rivera, Cole and Smith required differentiation.

### 4. The Fees Billed By Attorney Wirth and Attorney Thobani Should Not Be Stricken.

Plaintiff alleges defense counsel failed to show time billed or work performed by Attorneys Joseph Wirth ("JMW") and Sheila Thobani ("ST"). (Rivera ECF 41 at 23-24) This is inaccurate. Exhibit A to Baynard Declaration filed in support of their Petition for Attorneys' Fees and Costs has two entries of time on May 22, 2024, for Attorney Wirth. (Rivera ECF 38-1, p. 15)

| Date | Description | Attorney | Rate | Hours | Total |
|---|---|---|---|---|---|
| 05/22/2024 | [Rivera] Review Plaintiffs' Opposition to Defendants' Motion for Sanctions and exhibits and draft Defendants' Reply Brief. | JMW | $250.00 | 3.00 | $750.00 |
| 05/22/2024 | [Cole] Review Plaintiffs' Opposition to Defendants' Motion for Sanctions and exhibits and draft Defendants' Reply Brief. | JMW | $250.00 | 3.50 | $875.00 |

Attorney Cade cites no legal authority for his position that Attorney Wirth is precluded from billing fees on a case that he did not enter an appearance on. In fact, Attorney Cade sought

fees for work performed by Attorney Pusick in the Walker case, while she never entered a notice of appearance per PACER.

| Plaintiff | | |
|---|---|---|
| **Joseph Walker**<br>2659 S 15th Street<br>Milwaukee, WI 53215<br>414-234-2402 | represented by | **Allysa B Brown**<br>OVB Law & Consulting SC<br>839 N Jefferson St - Ste 502<br>Milwaukee, WI 53202<br>414-585-0588<br>Email: allysa@ovblaw.com<br>*TERMINATED: 10/03/2022*<br><br>**Madison M Bedder**<br>Cade Law Group LLC<br>PO Box 170887<br>Milwaukee, WI 53217<br>414-255-3802<br>Fax: 414-255-2804<br>Email: madison@cade-law.com<br>*ATTORNEY TO BE NOTICED*<br><br>**Nathaniel Cade , Jr**<br>Cade Law Group LLC<br>PO Box 170887<br>Milwaukee, WI 53217<br>414-255-3802<br>Fax: 414-255-3804<br>Email: nate@cade-law.com<br>*ATTORNEY TO BE NOTICED*<br><br>**Ohioma Emil Ovbiagele**<br>OVB Law & Consulting SC<br>826 N Plankinton Ave - Ste 600<br>Milwaukee, WI 53203<br>414-585-0588<br>Fax: 414-255-3031<br>Email: emil@ovblaw.com<br>*ATTORNEY TO BE NOTICED*<br><br>**Samantha Huddleston Baker**<br>OVBLaw & Consulting SC<br>826 N Plankinton Ave - Ste 600<br>Milwaukee, WI 53203 |

Similarly, the fact that Attorney Thobani is no longer employed by Wirth + Baynard is not a reason to exclude her time spent working on these cases to their successful conclusion of dismissal.

5.     **Defense Hourly Rates Are Reasonable and Should Not Be Reduced.**

The determination of an attorney's "reasonably hourly rate" is to be based on the "market rate" for the services rendered. *Spegon v. Cath. Bishop of Chicago*, 175 F.3d 544, 554 (7th Cir. 1999). This Court previously noted in the *Walker* decision that "the attorney's actual billing rate

10

Case 2:23-cv-01321-NJ     Filed 08/23/24     Page 10 of 16     Document 49

for comparable work is 'presumptively appropriate' to use as the market rate." (ECF 143 at 12-13, citing *Spegon v. Cath. Bishop of Chicago*, 175 F.3d 544, 555 (7th Cir. 1999)). Defense counsel submitted invoices that demonstrate Wirth + Baynard's "actual billing rate" charged in this case—$250 for attorneys and $150 for paralegals. Thus Defendants have met their initial burden of proof of their market rate.[3] Furthermore, in *Knowlton, et al v. City of Wauwatosa, et al*., 20-cv-1660, Attorney Motley did not challenge the reasonableness of defense counsel's hourly rates (Knowlton ECF 194, p. 1), and this court based their award of attorney's fees on those rates. (Knowlton ECF 205, p. 4)

Attorney Cade's 27-page Response acknowledges the well-established law in the Seventh Circuit that "the best evidence of the market rate is the amount the attorney actually bills for similar work…." (Rivera ECF 41 at 21); yet asks this court to ignore that law and reduce the hourly rates of defense counsel and paralegals for "failure to provide affidavits from attorneys and paralegals in the local market." (*id*.) This argument misses the mark.

Plaintiffs cite this court's ruling on a petition for attorneys' fees in *Walker v. City of Milwaukee,* (Eastern District Case No. 20-cv-487) to support a reduction of the hourly rates in this case. In *Walker* this court explained that because Attorney Baker was being paid on a contingency basis it did not have evidence of her "actual billing rate." (Walker ECF 143 at 13) Moreover, with all due respect to Attorney Baker, Attorney Baynard did not become a partner in 2022. Wirth + Baynard was created in 2022 after the merger of Attorney Wirth and Attorney Baynard. Prior to that merger, Attorney Baynard was a partner at Gunta Law Offices and prior to Gunta Law Offices, Attorney Baynard worked as an attorney at Crivello Carlson practicing in civil rights litigation. (Rivera ECF 38 ¶ 2-3) At the time these matters were initiated in October of 2023, Attorney

---

[3] Defendants acknowledge that Attorney Thobani's rate was not included in the Declaration of Attorney Baynard. Attorney Thobani graduated in 2018 and the time of the billing entry had approximately 5 ½ years of experience.

11

Case 2:23-cv-01321-NJ   Filed 08/23/24   Page 11 of 16   Document 49

Baynard had been practicing civil rights litigation for 6 ½ years.  In *Walker,* Attorney Baker was recruited as counsel in January of 2022 and had been practicing less than 4 years. (Walker ECF 143 at 4, 16)

      This court's reduction of the rates of Attorney Baker and several other less experienced associates and paralegals in the *Walker* case is not a proper comparison to the current case, where the court has evidence of the attorney and paralegal's actual billing rates.  But even assuming the court did not have the best of evidence of Wirth + Baynard's actual billing rates, evidence of the market rate could be derived from the Declaration of Attorney Cade submitted in the *Walker* case. (Walker ECF 137 "Cade Declaration") Interestingly, Attorney Cade sought fees for two of his associate attorneys—Attorney Bedder at an hourly rate of $250 and Attorney Pusick at an hourly rate of $285. (*Id*. ¶¶ 13-14) Attorney Cade's Declaration states, "Madison Bedder is an associate with the law firm of Cade Law Group LLC and a 2021 graduate of Marquette University Law School in the Fall 2022, and she is a 2020 graduate of the University of Alabama." (*Id*. ¶ 14) However, the Wisconsin State Bar directory indicates that Attorney Bedder graduated in 2023 and was admitted to practice on 05/22/2023.[4] Attorney Cade's Declaration states that Attorney Pusick graduated in 2021. (*Id*. ¶ 13) Attorney Cade's Declaration states that his hourly rate, with similar experience to Attorney Wirth, is $505. (*Id*. ¶ 17) Regardless, Attorney Cade's Declaration in the *Walker* case further supports the reasonableness of the hourly rate charged by Attorney Baynard and Thobani, and that Attorney Wirth's hourly rate is below market. *See Id.*

---

[4] https://www.wisbar.org/directories/pages/lawyerprofile.aspx?Memberid=1121996

### 6. The Court Should Reject Plaintiffs' Frivolous Meet and Confer Argument.

On June 6, 2024, the court sanctioned Attorney Motley by awarding Defendants their reasonable attorneys' fees and costs incurred in litigating these two actions. (Rivera ECF 35 at 8) The court ordered the parties to "confer and attempt to reach an agreement on the sanctions amount" and update the court before June 28, 2024. (*id*.) Now in a final effort to avoid sanctions for Attorney Motley's poor conduct, Attorney Cade further wastes judicial resources with his frivolous claim that Defendants did not meet and confer in good faith. (Rivera ECF 41 at 24-25) Attorney Cade's misrepresentation requires a brief timeline of the parties' meet and confer which is documents via the email chain attached to the supplemental declaration of Attorney Baynard as Exhibit B:

> On June 11, 2024, Attorney Baynard emailed Attorney Motley the following:
>
>> As you are likely aware, on June 6 the Court issued orders granting Defendants' motions for sanctions in the Rivera and Cole cases and in doing so awarded "reasonable attorneys fees and cost litigating both actions." The order also instructed that we meet and confer and attempt to reach an agreement on the amount of said sanctions. In an effort to do that, I have reviewed billing records in both matters and have come to the following total: $22,180.00. This is reflective of attorney's fees only—we will not seek reimbursement for any costs.

(Baynard Suppl. Decl. Exh. B at 1) That same day Attorney Motley responded requesting the bills be sent to her and her counsel, Attorney Cade. (*Id*. at 2)

On June 13, Attorney Baynard provided an itemization of all fees, which included a break down by date, timekeeper, activity billed for, hourly rate, and hours billed. (*Id*.)

On June 20, Attorney Cade responded, "Thank you for the draft bill" and requested the actual bill sent to our client. (*Id*. at 2-3)

On June 21, at 3:39 p.m. Attorney Wirth responded to Attorney Cade indicating the itemized bills were not "draft" time entries but the exact itemizations of work sent for payment and paid, with the exception of the redactions for privileged information. (*Id*. at 3) Attorney Cade responded that he wanted the bills that were sent out and look nice and pretty and expressing doubt that our clients actually paid the bill. (*Id.*) Attorney Wirth explained that the bills were paid upon submission "because we told our client that we needed to be able to truthfully represent to the court that all charges shown were billed and paid before we would tender them for review." Attorney Wirth also explained to Attorney Cade:

> Our invoices to our clients contain time spent on multiple cases, and production of the invoice requires the time and the risk of omission in redacting the entries from unrelated cases. If you still want the actual redacted bills, though, **let me know and we'll get them to you by the end of next week**. Requiring the extra work is not an effective negotiating technique if it is your intent to ask for a voluntary reduction of the amounts being sought.

(*Id*. at 4)

Instead of simply responding to that email requesting the actual redacted bills, Attorney Cade requested the "pretty invoice with your logo" and stated he would get the bills through open records request. (*Id*. at 5)

Before the end of the following week, on June 27, 2024, Attorney Baynard provided Attorney Cade the redacted invoices which contained the same information as the itemization previously provided on June 13. (*Id*. at 6) That email also provided a calculation of the total fee and asked that Attorney Cade inform counsel by noon the next day that if they were in agreement to remit payment in order to comply with the court's instruction.

Attorney Cade did not respond by noon and at 12:20 pm, emailed Attorney Wirth again claiming that he did not have the bills (although he did), but yet was somehow able to evaluate them and determine that the fees were unreasonable. Attorney Cade also suggested he had an

14

evaluation to support that position, but would not provide it. Attorney Cade offered that Attorney Motley would pay $3,000 and wrote "**If that is not acceptable, we will need to inform the court to set a hearing and/or briefing schedule.**" (*Id*. at 6-7)

At 1:02 p.m. that day Attorney Wirth responded that defense counsel would relay the offer to our clients and AGAIN confirming that we sent the "actual bills." (*Id*. at 7) Because the $3,000 offer did not align with the court's order that Defendants were awarded the total cost of litigation, not just the cost associated with the sanctions motion, Attorney Wirth wrote:

> **My further understanding is that the court awarded the costs of litigating the cases, not simply the costs of the dismissal motions. If your understanding is different, let me know because it may impact the client's evaluation of the offer. Suggesting that the costs of litigating two separate lawsuits from initial receipt and review of the matter through dismissal is 6 hours of attorney time per case is absurd on its face.**

Attorney Cade never responded to that email yet represents to the court that "without attempting to meet, Defendants filed a letter to the court indicating that the parties had not reached an agreement." (Rivera ECF 41 at 25)

The suggestion that defense counsel was not "forthcoming" in providing its bills to Attorney Cade is patently false. Defense counsel provided a cleanly organized and minimally redacted itemization of the hours spent litigating the cases from their initiated through dismissal. (Rivera ECF 43-5) Attorney Wirth also explained that because the cases were essentially duplicative of *Knowlton*, they were billed under the same occurrence. Defendants then provided the actual bills sent to the clients and confirmed that they were paid upon submission. (Rivera ECF 38-1; Baynard Suppl. Decl. Exh. B at 6-7) Even with those documents and explanation Attorney Cade continues to represent to the court that Defendants "still have never sent [the bills]." (Rivera ECF 41 at 25)

15

Plaintiffs continue to make material misrepresentation to the court and pursue arguments that are legally and factually unsupported. Thus, if the court does consider Plaintiffs' meet and confer argument, Defendants request that the Court also consider adjusting the fee award upward to reflect the purpose of sanctions that are to deter bad conduct.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the court enter an order directing Attorney Motley to pay WIRTH + BAYNARD's attorneys' fees equaling. $21,905. Defendants also respectfully request that the court order that Plaintiffs and their attorneys pay the fees and costs incurred to bring the instant motion to be paid at the same standard rates set forth in this memorandum and approved by the court's order.

Dated at Wauwatosa, Wisconsin this 23rd day of August 2024.

        **WIRTH + BAYNARD**
        Attorneys for Defendants

BY:   */s/ Jasmyne M. Baynard*
        Jasmyne M. Baynard (SBN: 1099898)
        Email: jmb@wbattys.com
        9898 W. Bluemound Rd. Suite 2
        Wauwatosa, WI 53226
        P: (414) 291-7979