UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**TRACY COLE and TALEAVIA COLE,**

    Plaintiffs,

  v.                                    Case No. 23-CV-1321

**CITY OF WAUWATOSA, et al.,**

    Defendants.

---

**WILLIAM RIVERA, et al.,**

    Plaintiffs,

  v.                                    Case No. 23-CV-1330

**CITY OF WAUWATOSA, et al.,**

    Defendants.

---

## DECISION AND ORDER ON DEFENDANTS' MOTIONS FOR ATTORNEYS' FEES

---

On June 5, 2024, I granted the defendants' motions for sanctions pursuant to Fed. R. Civ. P. 11 in the above-captioned cases. (Docket # 40 in Case No. 23-cv-1321; Docket # 35 in Case No. 23-cv-1330.) Defendants were awarded their reasonable attorneys' fees and costs for litigating both actions. (Docket # 40 in Case No. 23-cv-1321; Docket # 35 in Case No. 23-cv-1330.) The parties were ordered to confer and attempt to reach an agreement on the sanctions amount. When no agreement could be reached, I ordered the parties to brief the issue. The issue is now fully briefed and ready for resolution. For the reasons explained below, Defendants are awarded $14,305.00 in sanctions to be paid by Attorney Kimberley Motley.

## LEGAL STANDARD

Fed. R. Civ. P. 11 authorizes sanctions against a party who files frivolous pleadings, files pleadings for an improper purpose such as to harass or makes allegations that they know have no basis in law or fact. *See Janky v. Batistatos*, 259 F.R.D. 373, 377 (N.D. Ind. 2009). A court may impose sanctions for a violation of Rule 11 either upon a party's motion or on its own initiative. *Id.* Rule 11's purpose is to deter frivolous filings. The district court has broad discretion in setting a sanction award that it believes will serve the deterrent purpose of Rule 11, including directing the offending party to pay the other party's reasonable attorney's fees. *Divane v. Krull Elec. Co.*, 319 F.3d 307, 314 (7th Cir. 2003). Rule 11, however, is "'not a fee-shifting statute in the sense that the loser pays . . .' [i]nstead, 'Rule 11 ensures that each side really does bear the expenses of its own case—that the proponent of a position incurs the costs of investigating the facts and the law.'" *Id.* (quoting *Mars Steel Corp. v. Cont. Bank*, 880 F.2d 928, 932 (7th Cir. 1989)).

If the court determines that an award of attorney's fees will serve the deterrent purpose of Rule 11, it has an obligation to award only those fees which directly resulted from the sanctionable conduct. *Id.* "This ensures that the proponent of a sanctionable position ultimately pays the costs resulting from it, serving a dual purpose of deterrence and restitution, while avoiding blanket fee-shifting, which would have the tendency to overcompensate the opponent and penalize the proponent." *Id.* Although this analysis is an "inexact science," the court has stated that the analysis is "[e]ssentially . . . a matter of causation." *Id.* at 315. In other words, defendants should only be compensated for fees resulting from the plaintiff's sanctionable conduct.

## ANALYSIS

Again, Fed. R. Civ. P. 11(c)(4) permits a sanction in the form of an order "directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." In assessing reasonable attorney's fees under Rule 11, "a court may use the lodestar method, meaning a computation of the number of reasonable hours expended multiplied by a reasonable hourly rate." *Super Pawn Jewelry & Loan, LLC v. Am. Env't Energy, Inc.*, No. 11-CV-08894, 2015 WL 1777484, at *5 (N.D. Ill. Apr. 16, 2015) (internal quotation and citation omitted). There is a "strong presumption that the lodestar represents the reasonable fee." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (internal quotation marks omitted). However, once the lodestar is determined, the court may adjust the fee upward or downward based on a variety of factors, the most important of which is the degree of success obtained. *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3, 436 (1983).

Defendants seek attorneys' fees totaling $21,905.00, broken down as follows:

| | | |
|---|---|---|
| Attorney Baynard | 58.7 hours x $250 = | $14,675.00 |
| Attorney Wirth | 6.5 hours x $250 = | $1,625.00 |
| Attorney Thobani | 3.5 hours x $250 = | $875.00 |
| Paralegal Montgomery | 30.7 hours x $150 = | $4,605.00 |
| **TOTAL** | | $21,780.00 |

(Docket # 42 at 6; Docket # 49 at 4.)[1] As an initial matter, there appears to be a $125.00 discrepancy between the total fees sought and the chart provided. Thus, I will assume Defendants request $21,780.00, as stated in the chart. Defendants also request the additional fees and costs incurred briefing the fee petition amount. (Docket # 42 at 6.)

I will begin by calculating the lodestar amount.

---

[1] For ease of reference, I will cite to the documents filed in *Cole*, 23-cv-1321.

3

## 1. Reasonable Hours Expended

Defendants assert that they expended 99.4 hours litigating the *Cole* and *Rivera* cases, utilizing the services of three attorneys and one paralegal. Plaintiffs argue that the hours billed are unreasonable for several reasons. (Docket # 46.) First, Plaintiffs argue that because the Defendant City of Wauwatosa is insured, Defendants did not actually have to pay any of their attorneys' fees as counsel were paid by the City's insurer. (*Id.* at 5–6.) Second, Plaintiffs argue that Defendants failed to provide proper evidence to support their fee demand because the invoices are vague, redacted, and unofficial. (*Id.* at 8–12.) Finally, Plaintiffs argue that the requested fees are excessive, unspecific, and duplicative. (*Id.* at 12–21.)

### 1.1 Attorneys' Fees Covered by Insurance

Plaintiffs argue, without citation to legal authority, that because Defendants were insured and their insurance provides coverage for legal representation for covered losses, Defendants cannot now recover their attorneys' fees. Plaintiffs argue that neither the City nor the defendant officers paid "a single penny toward costs or attorney's fees because monies were paid to Wirth and Baynard via Defendants' insurer, a non-party." (*Id.* at 5–6.) Plaintiffs argue that "[e]thically, it is [ ] unclear where a sanctioned award would go considering that defense counsel already received funds from a non-party for the work incurred." (*Id.* at 8.)

Plaintiffs' argument is without merit. Rule 11 is punitive, not compensatory. *Brandt v. Schal Assocs., Inc.*, 960 F.2d 640, 645 (7th Cir. 1992). Indeed, the "central purpose" of Rule 11 is to deter baseless filings, *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990); a "Rule 11 sanction is *not* meant to reimburse opposing parties for their costs of defense," *Anderson v. Cnty. of Montgomery*, 111 F.3d 494, 502 (7th Cir. 1997), *overruled on other grounds by DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000) (emphasis in original). Rule 11 would lose its deterrent teeth if a

4

party could escape punishment simply because it was fortunate enough to have filed a frivolous action against an insured party.

Further, Plaintiffs' "ethical" concerns are unfounded. Plaintiffs argue that because Defendants' insurer paid the invoices Defendants filed with the Court, "it is improper and inappropriate for defense counsel to submit invoices sent, received, and paid for by a nonparty to this matter as evidence" of the fees incurred. (Docket # 46 at 8.) But Plaintiffs do not contend that defense counsel did not perform the work billed on the invoices, only that Defendants' insurer paid their legal fees. Thus, it is unclear how this factors into the number of hours reasonably incurred. Nor is the Court, as Plaintiffs contend, awarding fees to a non-party insurance company. (*Id.* at 6.) The fees are awarded to the Defendants. Whether the Defendants must subsequently pay the monies back to the insurance company pursuant to a subrogation provision in the insuring agreement (*see* Docket # 49 at 3) does not factor into the analysis. Thus, the fact Defendants have insurance coverage does not preclude a sanctions award.

### 1.2  Format of Invoices Provided

Plaintiffs also generally object to the invoices Defendants provided in support of their fee request, arguing that the invoices are impermissibly redacted, vague, or irrelevant. (*Id.* at 8–12.) Many entries on the invoices are heavily redacted; however, Defendants assert that they are not seeking reimbursement for redacted entries as those entries are unrelated to the *Cole* and *Rivera* cases at issue. (Docket # 49 at 6.) While it appears Defendants are not seeking fees for completely redacted entries, they do seek fees for several partially redacted entries. For example, Attorney Sheila Thobani billed 1.5 hours on November 14, 2023 for "[Rivera] Legal research [redacted]." (Declaration of Jasmyne M. Baynard "Baynard Decl.") ¶ 4, Ex. A, Docket # 43-1 at 3.) Once again, the purpose of Rule 11 sanctions is punitive; thus, sanctions

5

should only be awarded for fees resulting from the sanctionable conduct. While Attorney Thobani's entry, for example, cites to *Rivera*, without more information, I cannot say with confidence that this fee flows from the sanctionable conduct. Thus, I will cut the following hours with partially redacted entries:

- 10/10/2023, JMB, 2.5
- 11/6/2023, JMB, .5
- 11/7/2023, JMB, 2
- 11/9/2023, JMB, 2.5
- 11/13/2023, JMB, .6
- 11/14/2023, CMM, 1.7
- 11/14/2023, ST, 1.5[2]
- 11/16/2023, CMM, .9
- 11/20/2023, CMM, .4
- 12/1/2023, JMB, 1.3; CMM, .8
- 1/5/2024, CMM, .4
- 1/11/2024, CMM, .3

Plaintiffs further argue that many entries are vague; however, they do not point to specific entries on the invoices, rather they cite to the Defendants' brief where Defendants summarize how the hours generally "broke down." (Docket # 46 at 9–10, citing Docket # 42 at 4.) The only specific entries Plaintiffs point to are several partially redacted entries. (Docket # 46 at 10–11.) Because these entries have already been cut, I will not reduce the hours for "vagueness" any further.

   1.3  Excessive and/or Duplicative Entries

Plaintiffs argue that the time spent on the *Cole* and *Rivera* cases was excessive and duplicative of work already done in a related matter, *Smith v. City of Wauwatosa, et al.*, Case

---

[2] Defendants sought a total of 3.5 hours for Attorney Thobani's work. Plaintiffs argue that all of her entries should be stricken because Attorney Thobani subsequently withdrew from the case. (Docket # 46 at 24.) Simply because Attorney Thobani left Defendants' counsel's firm before the conclusion of the cases does not mean that the work previously performed on the case is no longer recoverable. I will not strike Attorney Thobani's time any further.

6

No. 23-cv-1337 (E.D. Wis.). (Docket # 46 at 12–21.) Plaintiffs note that in its Decision and Order granting the defendants' sanctions motions, the Court compared the *Smith* case to that of *Cole* and *Rivera*. (Docket # 46 at 12.) As further discussed in that decision, another plaintiff from the *Knowlton* case, Mariah R. Smith, filed a complaint on September 26, 2023 in Milwaukee County Circuit Court against the City of Wauwatosa, Captain Luke Vetter, Lieutenant Jeffrey Farina, Officer Ziegler, and unknown entities and insurance companies. (Docket # 1 in Case No. 23-cv-1337 (E.D. Wis.).) Attorney Motley did not represent Smith in this new action. Defendants moved for judgment on the pleadings on January 5, 2024, arguing that Smith's complaint was barred by res judicata and claim-splitting (Docket # 14 in Case No. 23-cv-1337) and within days, Smith's attorney stipulated to dismiss the complaint without prejudice (Docket # 15 in Case No. 23-cv-1337).

I cited counsel's actions in *Smith* as standing in "stark contrast" to Plaintiffs' counsel's response in *Cole* and *Rivera*. (Docket # 40 at 8.) In other words, I was pointing out that rather than voluntarily dismissing the cases when confronted with the res judicata and claim-splitting arguments as Smith's counsel did, Plaintiffs' counsel here insisted on pursuing a frivolous position through a motion for judgment on the pleadings, costing both the Court and the parties unnecessary resources.

That being said, I do find some repetition in Attorney Baynard's billing entries that need trimming. Specifically, Attorney Baynard's April 16, 2024 and April 18, 2024 entries for 3.7 hours and .6 hours, respectively, appear on both the May 23, 2024 invoice and the June 10, 2024 invoice. (Docket # 43-1 at 13, 15.) Given it is unclear whether these entries repeated on the later invoice because they were not previously paid, counsel may only recover for one of the bills. Further, Attorney Baynard billed 35 hours drafting and revising the Motion for

7

Case 2:23-cv-01321-NJ   Filed 11/22/24   Page 7 of 11   Document 51

Judgment on the Pleadings briefs in *Cole* and *Rivera* in February and March 2024. (*See* entries 2/28/24; 2/29/24; 3/1/24; 3/4/24; 3/5/24, 3/12/24, 4/16/24, 4/18/24.) These entries include the duplicative entries on April 16 and 18, stated above. Although the factual scenarios are not exactly the same in both cases, given the repetition in legal issues, and after subtracting the duplicate 4.3 hours, I find that 15 hours, or half of the time spent on both motions, is a more appropriate sanction.

Defendants also request 6.5 hours for work performed by Attorney Joseph Wirth. (Docket # 49 at 4.) While Plaintiffs assert that "there is no evidence of any work performed" by Attorney Wirth (Docket # 46 at 10), the invoices clearly show the 6.5 hours billed on May 22, 2024 for drafting Defendants' reply brief for the sanctions motions in both cases. (Docket # 43-1 at 15.) I see no reason to cut Attorney Wirth's time.

Finally, Plaintiffs argue the work performed by paralegal Christine Montgomery is "excessive and duplicative" and "should be stricken in its entirety." (Docket # 46 at 23.) Beyond their conclusory assertion, Plaintiffs do not demonstrate how paralegal Montgomery's time was excessive and/or duplicative. Plaintiffs argue that paralegal Montgomery's work was performed "in conjunction with the attorneys," thus warranting excision. (*Id.*) But a paralegal will, of course, work "in conjunction" with the attorneys—that is part of the "valuable work in any law firm," that Plaintiffs acknowledge paralegals provide. (*See id.*) Beyond the partially redacted entries cited above, I will not further reduce paralegal Montgomery's time.

Thus, I find the reasonable hours expended as follows:

| Attorney Baynard | 33 hours |
| Attorney Wirth | 6.5 hours |
| Attorney Thobani | 2 hours |

8

Case 2:23-cv-01321-NJ   Filed 11/22/24   Page 8 of 11   Document 51

| Paralegal Montgomery | 26.2 hours |
|---|---|

    *2.    Reasonable Hourly Rates*

Next, I must determine the reasonable hourly rate for the three attorneys and the paralegal. A reasonable hourly rate is "'the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question.'" *Spegon v. Catholic Bishop of Chicago*, 175 F. 3d 544, 555 (7th Cir. 1999) (quoting *Bankston v. State of Illinois*, 60 F.3d 1249, 1256 (7th Cir. 1995)). The burden of proving the "market rate" is on the fee applicant; however, once the attorney provides evidence establishing his market rate, the burden shifts to the opposing party to demonstrate why a lower rate should be awarded. *Id.* at 554–55. The "attorney's actual billing rate for comparable work is 'presumptively appropriate' to use as the market rate." *Id.* at 555.

Defendants have established through their attached invoices that the stated rates for counsel and paralegal Montgomery are their "actual billing rates." These are the rates charged to their client (whether paid by the insurance company or not) for the work performed. Thus, these rates are "presumptively appropriate." *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1311 (7th Cir. 1996). The burden then shifts to Plaintiffs to show why a lower rate should be awarded. As to Attorney Wirth, the Plaintiffs concede that his hourly rate of $250/hour is reasonable. (Docket # 46 at 23.) As to Attorney Thobani and paralegal Montgomery, while Plaintiffs argue their hours should be cut in their entirety, they fail to demonstrate why a lower rate should be awarded. Thus, I find these rates reasonable.

Rather, Plaintiffs focus on Attorney Baynard's hourly rate of $250/hour, arguing that a more appropriate rate is $200/hour. (Docket # 46 at 23.) Plaintiffs rely solely on this Court's March 29, 2024 Decision and Order on Plaintiff's Motion for Attorneys' Fees and Costs in

*Walker v. City of Milwaukee, et al.*, Case No. 20-cv-487 (E.D. Wis.) in which Attorney Samantha H. Baker was awarded an hourly rate of $200/hour. (Docket # 143 at 19 in Case No. 20-cv-487.) Plaintiffs argue that Attorney Baynard and Attorney Baker are "similarly situated," thus, Attorney Baynard should also be awarded a rate of $200/hour.

*Walker*, however, is distinguishable. To begin, because counsel in *Walker* charged their client on a contingency fee basis, I had no evidence of the attorneys' "actual billing rates." (Docket # 143 at 13 in Case No. 20-cv-487.) Once again, evidence of an attorney's "actual billing rate" is presumptively appropriate to use as the market rate. And Plaintiffs fail to meet their burden of showing that a lower hourly rate for Attorney Baynard is warranted based on a comparison with Attorney Baker. Attorney Baynard has more experience than Attorney Baker in litigating civil rights cases. She has practiced law since 2017, practiced civil rights litigation at Gunta Law Offices and Crivello Carlson S.C. before starting a firm with Attorney Wirth in April 2022, and has litigated many civil cases to trial and represented hundreds of individual clients in court in various legal matters. (Baynard Decl. ¶¶ 2–3.) Whereas Attorney Baker has practiced law since 2018, was promoted to partner with the law firm OVB Law & Consulting, S.C. in December 2022, and practices "all aspects of litigation," including civil rights litigation. (Declaration of Samantha H. Baker ¶¶ 2–3, Docket # 132 in Case No. 20-cv-487.) Furthermore, Attorney Baker asserts that she currently charges $300/hour, as an attorney with less experience than Attorney Baynard. (Baker Decl. ¶ 5.) As one judge stated in this district over a year ago, "[t]he rate of $250 per hour for civil rights legal work presents no glaring issue here." *Froemming v. Carlson*, No. 19-CV-996-JPS, 2023 WL 6215371, at *2 (E.D. Wis. Aug. 14, 2023). Nor does it present an issue in the case of Attorney Baynard. I will not reduce her hourly rate. Thus, the final lodestar amount is as follows:

| Attorney Baynard | 33 hours x $250 = | $8,250.00 |
| Attorney Wirth | 6.5 hours x $250 = | $1,625.00 |
| Attorney Thobani | 2 hours x $250 = | $500.00 |
| Paralegal Montgomery | 26.2 hours x $150 = | $3,930.00 |
| **TOTAL** | | $14,305.00 |

    3.    *Adjustment of the Lodestar*

Although there is a strong presumption that the lodestar represents the reasonable fee, *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011), the court may adjust the fee upward or downward based on a variety of factors, the most important of which is the degree of success obtained, *Hensley*, 461 U.S. at 430, n.3, 436. Although Plaintiffs do not specifically ask for a downward adjustment, they argue that Defendants did not confer in good faith because they did not provide the "invoices sent or paid for by the City of Wauwatosa." (Docket # 46 at 24–25.) For the reasons discussed above, Plaintiffs' insistence that because Defendants have insurance coverage they are not truly requesting the payment of reasonable attorneys' fees is unavailing. No downward adjustment for alleged bad faith by the Defendants is warranted.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that Defendants are awarded $14,305.00 in sanctions to be paid by Attorney Kimberley Motley. Attorney Motley is ordered to pay the sanction amount within 30 days of the date of this Order.

Dated at Milwaukee, Wisconsin this 22nd day of November, 2024.

BY THE COURT

_____
NANCY JOSEPH
United States Magistrate Judge